## THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* MURRAY MCCONNEL

*v.*

## JAMES H. BEVERIDGE, Treasurer.

1. CONSTITUTIONAL LAW—*of appropriations for the pay of members of the General Assembly.* That portion of the act of 1865, entitled "*An act making certain appropriations not otherwise provided for,*" which declares that the *per diem* and mileage of the members of the then present General Assembly should be paid in gold coin, is not in violation of the twenty-second section of the third article of the Constitution, which provides that bills making appropriations for the pay of the members and officers of the General Assembly, &c., shall not contain any provision on any other subject, although by such act appropriations are distinctly made for other and different purposes. That clause merely directs in what kind of funds the Treasurer shall pay the members for which appropriations had already been made according to the requirements of the Constitution.

2. SAME—*granting extra compensation after services rendered.* Nor is the clause mentioned, in violation of the thirty-third section of that article of the Constitution, which declares that the General Assembly shall never

grant or authorize extra compensation to any public officer, agent, &c., after the services shall have been rendered, or the contract entered into. The services to pay which the act of 1865 was passed, had not been rendered at the date of the act, nor does the act grant any extra compensation.

3. SAME—*increasing former appropriations—when two-thirds vote required.* As the act does not increase the compensation of the members, a vote of two-thirds was not necessary to its passage, under the thirty-seventh section of the third article of the Constitution, which provides that appropriations for the expenses of the Government made by the General Assembly, shall not be increased without a vote of two-thirds of each house.

4. APPROPRIATIONS—*for pay of the members—whether the specific kind of funds should be named.* When the act of appropriation of 1863 for the pay of the members of the next General Assembly, was passed, nothing but gold was the currency of the Constitution, so it was unnecessary then to direct that warrants drawn on that appropriation should be paid in gold. The omission so to direct did not exclude the idea of payment in gold.

5. But when, at the same session, the act making United States legal tender treasury notes and postage currency receivable for taxes was passed, it became necessary to direct in what medium the members should be paid. Hence the act of 1865 directing that they should be paid in gold.

6. STATE TREASURER—*in what funds he must pay.* The act of 1865 directing that the members of that General Assembly should be paid in gold coin, was mandatory to the Treasurer, and he was shorn of any discretion, provided always, the coin was in the Treasury when the warrants were presented.

7. SAME—*on what fund warrants will be regarded as being drawn.* The appropriation act of 1863 provided that the Auditor should draw his warrants for the pay of members of the General Assembly, on the revenue fund, and although the warrants issued did not purport to be drawn on that fund, in so many words, yet, in legal contemplation, they must be understood as being so drawn.

8. SAME—*out of what fund warrants must be paid.* Warrants drawn upon the revenue fund must be paid out of that fund. The Treasurer is inhibited from paying such warrants out of any other fund. He can not pay them out of the school fund, the Central Railroad fund, or the fund raised by special tax for the payment of the interest on the State debt.

This was an application to this court in the name of the People of the State of Illinois, on the relation of Murray McConnel, for a writ of mandamus against James H. Bever-

idge, Treasurer of this State, to compel him to pay a certain warrant drawn upon the Treasury, in gold coin.

The relator alleges in his petition that he was duly elected and qualified as Senator in the Twenty-Fourth General Assembly of the State of Illinois, and took his seat and served in said Senate at the session began and held on the first Monday in January, 1865, until the end of that session.

That after the close of said session, the Auditor of Public Accounts, for the services aforesaid, issued and delivered to the relator, a warrant upon the Treasurer, as follows:

" $95  20.                                              No. 4169.

' AUDITOR'S OFFICE, ILLINOIS,

"Springfield, February 16th, 1865.

" *Treasurer of the State of Illinois :*

"Pay to Murray McConnel, or order, ninety-five dollars and twenty cents, for his *per diem* and mileage, in full, as Senator in the Twenty-Fourth General Assembly.

"O. H. MINER,

" Auditor of Public Accounts."

It is alleged that this warrant was duly presented to the Treasurer on the day of its date, and was by him countersigned and registered, and payment thereof demanded in gold coin, under the provisions of the act of 16th February, 1865, entitled " *An act making certain appropriations not otherwise provided for,*" which, among other provisions declared, as follows :   " And the *per diem* and mileage of the members of the present General Assembly, and the Speaker of the Senate and the Speaker of the House, shall be paid out of the Treasury in gold coin."

The relator states that at the time of the presentation of said warrant to the Treasurer for payment, there was, and as he believes, there is still, gold coin in the Treasury, which was by said act appropriated to pay said warrant; yet the Treasurer refused to pay the same in such gold coin. Wherefore he prays that a writ of mandamus may issue, commanding the

Treasurer to pay said warrant in gold coin, or to show cause for refusing so to do.

In answer to this petition, the respondent, James H. Beveridge, the Treasurer, admitted the election and qualification of the relator as Senator, and the issuing of the warrant of the Auditor to him for his *per diem* and mileage, as alleged, and the presentation of such warrant for payment, and his refusal to pay the same in gold coin.

As one of the reasons for such refusal the respondent alleges that the act of February 16, 1865, referred to by the relator, although purporting to have been duly passed and approved, was not passed by a majority of two-thirds of the members of either branch of the General Assembly, as appears from the journals of the respective houses, and therefore submits whether said act is not void and inoperative, as contravening alike the 22d, the 26th, the 33d and 37th sections of the 3d article of the Constitution.

The respondent admits that at the time of the presentation of said warrant for payment there was sufficient gold in the Treasury to have paid the same, and that there still is sufficient gold in the Treasury for that purpose, but he does not admit that such gold coin was at any time subject to the payment of said warrant, or that it was his duty to appropriate any portion of such coin for that purpose.

The respondent further says, that by the 37th section of the 3d article of the Constitution, it is provided that each General Assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the Government until the adjournment of the next regular session, the aggregate amount of which shall not be increased without a vote of two-thirds of each house, nor exceed the amount of revenue authorized by law to be raised in such time. That under and in pursuance of said provision, and also in conformity to the 22d section of the same article, the Twenty-Third General Assembly passed an act, appro~ 1 June 12, 1863, entitled " *An act making appropriations ▲ the pay of the officers and*

*members of the next General Assembly, and for the salaries of the officers of the Government,*" in which said act provision was made for the pay of the members of the General Assembly, for the payment of which the second section of that act declared that the Auditor should draw his warrants on the *revenue fund,* to be paid by the Treasurer out of such fund in the Treasury.

The respondent further states that by law, and the usage of the Treasurer's Office, moneys received by the Treasurer are credited as received to the various accounts and funds on account of which they were levied and collected, or to which, by provision of law, they are appropriated when received by the Treasurer; and the respondent alleges that at the time of the presentation of said warrant, there was not, nor at any time since has there been any gold coin in the Treasury to the credit of the revenue fund, out of which fund alone could said warrant have been legally payable.

Respondent insists that the only law by which he should have been guided and governed in the payment of said warrant, was the said act of June 12, 1863.

The respondent further says, that by the provisions of an act entitled "*An act to provide for the payment of the interest on the sterling bonds of the State,*" approved February 16, 1865, it was provided that the silver and gold coin then in the Treasury should be appropriated for the purpose of paying the interest on the sterling bonds of the State, payable in London, and that the same should be set apart for that purpose ; and which said act, although bearing the same date of approval by the Governor, was in fact approved by him later than his approval of the act entitled "*An act making certain appropriations not otherwise provided for.*" And that at the time of the presentation of said warrant for payment, said first mentioned act was in full force and effect.

It was stipulated and agreed between the parties that the act entitled "*An act to provide for the payment of the interest on the sterling bonds of this State,*" and the act entitled "*An act*

*making certain appropriations not otherwise provided for,"*
were both approved by the Governor on the 16th day of
February, 1865, and the first mentioned act was last approved,
but in point of fact, the first mentioned act was passed by both
branches of the General Assembly several days before the act
last mentioned.

Mr. MURRAY MCCONNEL, relator, *pro se.*

Messrs. HAY and CULLOM, for the respondent.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is an application for a mandamus to compel the
Treasurer of the State to pay a certain warrant in favor of the
relator in gold coin.

The facts are these. The relator was a member of the
Senate in the late General Assembly and, as such, entitled to
a certain *per diem* and mileage, the amount being fixed by the
Constitution.

At the late session of the General Assembly, at which the
relator attended as Senator, an act was passed entitled "*An
act making certain appropriations not otherwise provided for,"*
the second section of which in its last clause, is as follows:
" And the *per diem* and mileage of the members of the present
General Assembly, and of the Speaker of the Senate, and the
Speaker of the House, shall be paid out of the State Treasury
in gold coin. (Sess. Laws 1865, page 14.)

At the same session, and on the same day, the General
Assembly passed another act entitled "*An act to provide for
the payment of the interest on the sterling bonds of the State,"*
the first section of which provides, " that the gold and silver
coin now in the Treasury be and is hereby appropriated for
the purpose of paying the interest on the sterling bonds of the
State, which are payable in London." *Ib.* page 22.

It is agreed that both these acts were approved on the same

day, but the last recited act was approved last, but actually passed both houses several days prior to the first named act.

It is insisted by the respondent, that the act requiring payment to the members to be made in gold is contrary to the twenty-second, twenty-sixth, thirty-third and thirty-seventh sections of article three of the State Constitution.

Article three relates to the legislative power of the State. Section twenty-two provides, that bills making appropriations for the pay of the members and officers of the General Assembly, and for the salaries of the officers of the Government, shall not contain any provision on any other subject. Section twenty-sixth provides, that no money shall be drawn from the Treasury but in consequence of appropriations made by law, &c. Section thirty-third provides, that the General Assembly shall never grant or authorize extra compensation to any public officer, agent, servant or contractor, after the service shall have been rendered, or the contract entered into. Section thirty-seventh provides, that each General Assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the Government, until the adjournment of the next regular session, the aggregate amount of which shall not be increased without a vote of two-thirds of each house, nor exceed the amount of revenue authorized by law to be raised in such time. Scates' Comp. p. p. 61, 62.

It is urged by the Treasurer, that this act, on its face, shows it is in conflict with section twenty-second, as it is made up of provisions on other subjects having no relation to the pay of the members of the General Assembly. This objection is *petitio principii*, a begging the question, as it is not shown, this clause of the act is an act making appropriations for the pay of the members. The appropriations in the act are distinctly made for other and different purposes. This clause merely directs in what kind of funds the Treasurer shall pay the members for which appropriations had been made in obedience to the requirements of section thirty-seventh of the Constitution. These appropriations were made by the act of

21—38TH ILL.

June 12, 1863. (Sess. Laws 1863, page 21.) Therefore there is no violation of the twenty-sixth section.

Nor is it in violation of section thirty-three, because the services to pay which the act of 1865 was passed, had not been rendered at the date of the act, nor does it, in terms, or by fair implication, grant any extra compensation to the members of the Legislature, even if this section can be rightfully considered as applicable to them.

As this act does not increase the compensation of the members, it can not be said to violate the thirty-seventh section. Not increasing the compensation, a vote of two-thirds was not necessary to pass the bill.

The compensation of the members of the General Assembly is fixed by section twenty-fourth of this same article three, at two dollars per day for forty-two days' attendance, and one dollar per day for each day's attendance thereafter, and ten cents for each mile of necessary travel going to and returning from the Seat of Government.

This compensation was payable in the money of the Constitution, that is, in gold coin, so that the act of 1865, requiring it to be paid in such coin, was no more than a reiteration of the demands of the Constitution, and in no sense an amendment of the act of 1863, which appropriated the money to pay it.

It is urged by the Treasurer, that the act of 1865, requiring payment in gold coin, violates section twenty-sixth, for the reason that there was not, by the act of 1863, any appropriation of this coin, and consequently, there being no appropriation of it by that act, payment in gold can not be insisted on by the relator.

To this it may be answered, that the act of 1863, making the appropriation to pay the members, does not exclude the idea the payment was to be made in gold. Nothing but gold was then the currency of the Constitution, so that it was unnecessary then to direct the Treasurer to pay the warrants drawn on this appropriation, in gold coin. But when, at the same session, the act making United States legal tender

Treasury notes and postage currency receivable for taxes, was passed, and those notes filled the vaults of the Treasury, occupying places where gold should have been, it became necessary to direct the Treasurer in what medium he should discharge the warrants drawn in favor of the members of the General Assembly, hence this law of 1865. This law, then, is mandatory to the Treasurer, and he is shorn of any discretion, provided always, the coin is in the Treasury when the warrant is presented.

It is urged by the Treasurer that these warrants to the members of the General Assembly are all drawn on a specific fund, called the "Revenue Fund," and that when the warrant was presented by the relator, and when the same was issued, there was no gold coin in the Treasury belonging to that fund.

It is true, the act of 1863, before cited, by section two, provides that the Auditor, upon presentation of the certificates of the Speaker of each house, shall draw his warrant upon the revenue fund for the amount to which each person shall be entitled as aforesaid, to be paid by the State Treasurer out of the said revenue fund in the State Treasury.

The warrant drawn in this case does not purport to be drawn on this fund, in so many words, but in legal contemplation, it must be understood as so drawn, and being so drawn, the Treasurer is inhibited from paying it out of any other than the revenue fund. He could not pay it out of the School Fund, the Central Railroad Fund, or the fund raised by special tax for the payment of the interest on the State debt. Those funds are a sacred deposit to meet and discharge trusts of the most important character devolving upon the State, and which her honor requires shall never, under any pretense, be misapplied.

If then, we understand the answer of the Treasurer, he has in the Treasury gold coin more than sufficient to discharge this warrant, but that it does not belong to the revenue fund, on which the warrant, by the terms of the law, is drawn, consequently the relator can not, with propriety, claim to have his

warrant- paid out of any other fund made up of gold coin. It is not for this court to¦ say how the revenue fund, so called, is constituted, of what items of revenue it is made up¦; it is sufficient the law of 1863 emphatically directs the warrants for the pay of the members of the General Assembly to be drawn on that fund, and the Treasurer is specially directed to pay them out of that fund, thereby, by clear implication, pro- hibiting payment out of any other fund.

The other act, providing for the payment of the interest on the sterling bonds of the State, we understand from the Treasurer's answer, has been executed, and · after paying such interest, there remains no gold coin in the Treasury belonging to any fund. The application for a peremptory mandamus must be denied.

*Mandamus refused.*